MARVIN S. CADWELL v. ORMAN O. PRAY AND JOHN A.
BARRINGTON.

[See 41 Mich. 307; 50 Id. 222.]

*Trover—Demand—Estoppel—Evidence—Assignment of claim.*

1. One who, in answer to a demand for personal property, admits
that it is in his possession and under his control, but refuses
to deliver it to the demandant, and thereby induces him to
incur the expense of a suit for its value, is estopped from
claiming as a defense in such suit that he did not, at the time
of such demand, have possession and control of the property.

2. Evidence of matters pertaining to the history of the case in
which it is offered is held unobjectionable.

3. An assignment by a defendant in a replevin suit of all of his
right, title, and interest in the suit conveys his right, title, and
interest in the goods taken under the writ.

Error to Ingham. (Peck, J.) Argued May 8, 1891.
Decided June 5, 1891.

Trover. Defendants bring error. Affirmed. The
facts are stated in the opinion.

*Spaulding & Walbridge,* for appellants, contended:

1. No relation existed between Barrington and the plaintiff to
which the doctrine of estoppel can apply. Plaintiff's evidence
shows that he did not and could not have relied upon Cook's
report of what Barrington said to him; citing, as bearing on
the doctrine of estoppel, *Gorham v. Arnold,* 22 Mich. 247;
*Palmer v. Williams,* 24 Id. 328; *Fredenburg v. Church,* 37 Id.
476; *Rust v. Bennett,* 39 Id. 521; *DeMill v. Moffatt,* 49 Id. 125;
*Conrad v. Fisher,* 37 Mo. App. 352.

*John B. Cook (J. E. Nichols* and *Q. A. Smith,* of coun-
sel), for plaintiff, contended:

1. The second demand was no waiver of the prior conversion of
the goods by Barrington; citing 6 Wait, Act. & Def. 211;
*Manwell v. Briggs,* 17 Vt. 176; *Cobb v Wallace,* 5 Coldw. 539.

2. The absolute refusal of Barrington to give up the residue of the goods on Cook's demand is full evidence of a conversion unless rebutted or explained; citing *Dietus v. Fuss*, 8 Md. 148; *Magee v. Scott*, 9 Cush. 148.

3. Where the issue involves a charge of fraud, evidence tending to show it is freely admitted, and a wide range of inquiry into transactions between the parties is allowed; citing *Anderson v. Walter*, 34 Mich. 113; *Jacobson v. Metzger*, 35 Id. 103; *Fury v. Strohecker*, 44 Id. 337.

4. Defendant Barrington could not absolutely refuse to deliver the goods, and then, upon the trial, show matters in justification short of a right in himself; citing 6 Wait, Act. & Def. 212; *Spence v. Mitchell*, 9 Ala. 744; *Ingalls v. Bulkley*, 15 Ill. 224; *O'Donoghue v. Corby*, 22 Mo. 393.

MORSE, J.   The plaintiff sued the defendants jointly for the conversion of certain goods, and recovered judgment, in the circuit court for the county of Ingham.

The suit grows out of the litigation in the case of *Pray v. Cadwell*, 50 Mich. 222.

The undisputed facts leading up to the present controversy are briefly as follows: In April, 1878, Orman O. Pray held a note and chattel mortgage against Marvin S. Cadwell, upon which the sum of $600 was due.   The note and mortgage were originally given by Cadwell to the defendant John A. Barrington, who had guaranteed the collection of the same to Pray.   A day or two before the maturity of this note, Marvin S. Cadwell sold his entire stock of goods, which were covered by the mortgage, to his brother, Warren W. Cadwell.   Barrington, in the interest of Pray, demanded payment of the note of Marvin S. Cadwell, which was refused; and Warren W. Cadwell refused to surrender the goods, or permit them to be taken upon the mortgage.   Pray thereupon replevied the entire stock of goods, which was the suit settled by this Court in *Pray v. Cadwell, supra*.   The opinion of the Supreme Court was filed February 27, 1883.   In the meantime Pray sold enough

of the goods under and by virtue of the chattel mort-
gage to satisfy the debt secured by the same.  The goods
not sold he boxed up, and stored them in the same
building where they were when taken, in the village of
Eureka, Clinton county.  The goods remained where
placed until the summer of 1883, when they were
removed to a small barn.  In 1884, by the direction of
Orman O. Pray, these goods were shipped to Petoskey,
Mich., and there disposed of by him.

This act of Pray was admitted to be a conversion of
the goods, as far as he was concerned; but the defense
was that Barrington had never converted the goods or
meddled with them in any way so as to render him liable
in this action.

The plaintiff claimed and introduced evidence tending
to show that in September, 1880, Warren W. Cadwell
assigned his interest in the lawsuit between Pray and Cad-
well and the goods to him; that on the 28th day of
February, 1883, the next day after the opinion of the
Supreme Court was filed in that suit, he sent one S. L.
Cook and Arthur Morse, of Lansing, with a team and
wagon to Eureka for the goods, with full authority on
the part of Cook to demand and receive the goods.  It
was understood by Cadwell that the goods were in the
possession of the defendant Barrington, and the demand
by Cook was made to him.  Cook testifies, and is cor-
roborated by Morse, that Barrington said he had the pos-
session of the goods, but he would not give them up,
except upon a writ of replevin.  He refused to tell where
they were.  In November, 1888, before the commence-
ment of this suit, the plaintiff went to Barrington, and
again demanded the goods.  He testifies that Barrington
informed him that he had turned them over to Pray.
He then went and demanded the goods of Pray, but did
not get them.  After the demand made by Cook, the

plaintiff testifies that he assigned his interest in the goods to Anderson Stout, of St. Johns, an attorney, for collection. Mr. Stout, with an officer from St. Johns, went to Eureka, and searched for the goods upon the premises of Barrington, but did not find them. Plaintiff claims that before the beginning of the present suit Stout had reassigned the goods to him.

The defendants introduced testimony tending to show that, soon after the boxing up of the unsold goods by Pray, Mr. Walbridge, his attorney, notified Warren W. Cadwell, in the presence of the plaintiff, at Stout's office, in the village of St. Johns, of the disposition he had made of the goods, and served a written notice upon him to the effect that the goods were subject to the order of the Cadwells at any time they saw fit to take them. Walbridge testified that he served this written notice upon both of the Cadwells, and that Warren tore his notice up, and stamped upon the pieces, saying he would have the whole of the goods or none. The plaintiff has no recollection of any such occurrence.

Barrington testified that he had nothing to do with the goods after they were taken by Pray upon the mortgage in the replevin suit of *Pray v. Cadwell.* He admitted that he demanded pay upon the note, and for the reason that he was interested in its collection by reason of his guaranty, and that he employed an attorney to assist in trying the replevin suit of *Pray v. Cadwell.* He admitted that Cook demanded the goods of him for plaintiff in 1883, but denied that he had any possession or control of the goods at that time, or that he told Cook that he had; yet on his direct examination he testified that he told Cook, in substance, that he did not feel safe in giving the goods over to Cadwell; that he thought Pray had the better right to them, and Pray would hold him responsible for them; and that he knew

where the goods were. On cross-examination, he further testified that he told Cook he had the goods, and would not let him have them.

It is evident from the whole testimony that, in his talk with Cook, Barrington led him to believe that he had possession or control of the goods, and refused to deliver them up. This was sufficient to justify the court in charging the jury as he did, in substance, that, if Barrington in this interview admitted that he had the goods in his possession and under his control, and refused to deliver them up, and the plaintiff acted upon such demand, admission, and refusal in bringing this suit, and was thereby induced to incur the expense of litigation in this case, Barrington was estopped from now claiming and asserting in defense that he did not, at that time, have possession and control of the goods.

Error is assigned because the court permitted the plaintiff to state the inception of the note and mortgage, the institution of the replevin suit of Pray against Cadwell, the demand made by Barrington for the payment of the note, and other matters leading up to the controversy out of which his claim against the defendants arose, being matters, as we think, of the history of the present case, and unobjectionable. There was nothing in the testimony calculated to prejudice the defendants' case, except, perhaps, the fact that Barrington demanded payment of the note while Pray owned it, and before the beginning of the replevin suit, and this fact was material and competent.

Error is also assigned upon the admission of three exhibits. One was dated September 27, 1880, in which Warren W. Cadwell assigned to plaintiff all his right, title, and interest in the suit in which Pray was plaintiff and Warren W. Cadwell was defendant, upon the condition that plaintiff should pay all the costs in the suit

and the attorney fees of Stout and Strickland. Another was an assignment from Warren to plaintiff of all his right, title, and interest in the goods taken upon the writ of replevin in the same suit (*Pray v. Cadwell*), and reciting that this transfer was made for the purpose of more fully specifying the conditions of the sale made in the first exhibit of September 27, 1880, which was meant and understood to be an assignment of his interest in the goods. This last assignment was dated January 16, 1889. We think these exhibits were admissible.

Testimony of plaintiff was permitted, against objection, that the understanding was that the assignment of September 27, 1880, conveyed the title of Warren in the goods to plaintiff. This was not error, because we are satisfied that the first assignment conveyed the goods without such testimony, and therefore no harm was done the defendants. All the interest that Warren had in the replevin suit was the goods or their value, and, when he assigned his right, title, and interest in the suit to plaintiff, he conveyed all his right, title, and interest in all the goods taken under the writ. The last exhibit was the assignment of Stout to plaintiff, and was clearly admissible.

We find no error in the latitude allowed counsel by the court in the cross-examination of the defendant Barrington.

The court was requested by defendants' counsel to instruct the jury that title to the goods in question did not pass from Warren Cadwell to plaintiff until the last assignment was made, January 16, 1889. This was based upon the claim that the first assignment was not an absolute one, and that it devolved upon plaintiff to prove that he had performed the conditions of the instrument at the time he made the demand of Barrington. We think this claim not tenable. It appears by the second

assignment that the conditions had been fulfilled when this suit was brought, and Barrington did not refuse to deliver the property to plaintiff because it belonged to Warren, but because he thought Pray had the better right to it.

Some of the requests of counsel for defendants, upon which assignments of error are based because of the refusal of the court to give them, were substantially given by the court in other requests or in his general charge. The plaintiff was not permitted to recover because of the demand made in November, 1888, for the reason that at that time the claim had been assigned to Stout. This covered the defendants' eighth request.

The court was asked to instruct the jury that there was no evidence in the case tending to show that the goods were ever in the actual or visible possession or control of Barrington. This was properly refused. There was enough in Barrington's own testimony to warrant them in believing that he had the control of the goods, and could have delivered them when Cook demanded them; and plaintiff testified that Barrington told him in November, 1888, that he had turned them over to Pray, which, if true, was an admission that he was at one time in possession of the goods.

The court instructed the jury, in substance, that if the defendants conspired together, united in a common design, to withhold these goods from plaintiff, both would be responsible for what each said and did in furtherance of such common purpose; but if they found no such conspiracy or common design, then one defendant could not be held responsible for what the other said or did, not in the presence of both of them. It is contended that there was no testimony in the case tending to show any such conspiracy or common purpose. We think there was sufficient evidence to warrant the jury in finding

that there was such common design.  At any rate there were circumstances tending to show it, and the instruction was not error.

We do not deem it necessary to notice the other allegations of error.  The charge of the court was an exhaustive one, and remarkably clear and explicit, and we find no error in it.

The judgment is affirmed, with costs.

CHAMPLIN, C. J., McGRATH and LONG, JJ., concurred.  GRANT, J., did not sit.